IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-00656-LTB-MEH

CHUCK CURTIS,
DARREN LEHRICH, and
DOUGLAS HAYNES, individuals,

       Plaintiffs,

v.

RICHARD N. BROWN,
CHARLES ROSENQUIST, individuals,
LADY BELLE PARTNERSHIP, L.L.P. , an Arizona limited liability limited partnership,
C.H.R., INC., a Colorado corporation, and
VAIL 21 CONDOMINIUM ASSOCIATION, INC., a Colorado corporation,

       Defendants.

_____

ORDER
_____

       This matter is before me on a Motion to Dismiss filed by Defendants Richard N. Brown and Charles Rosenquist, as individuals; Lady Belle Partnership, LLLP, an Arizona limited liability limited partnership; and C.H.R., Inc., a Colorado corporation. [**Doc #14**] These Defendants request dismissal of the Verified Complaint and Jury Demand filed by Plaintiffs, Chuck Curtis, Darren Lehrich, and Douglas Haynes. Oral arguments will not materially aid in the resolution of this motion. After consideration of the parties' briefs and related pleadings, and for the reasons stated below, I GRANT IN PART and DENY IN PART Defendants' motion seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  BACKGROUND

In their complaint, Plaintiffs allege the following facts.  In 1972, Defendants Brown and Rosenquist, as well as two non-parties, constructed the Vail 21 Building on property they owned in Eagle County, Colorado.  Also at that time, Brown, Rosenquist and the others acquired an additional parcel of related property known as Parcel No. 3.  Plaintiffs aver that the contract to purchase Parcel No. 3  "contained a provision that required that such parcel be used solely for the purposes of constructing a parking garage (the "garage") to provide a minimum of fifty-eight parking spaces for the owners of the condominium units of the Vail 21 Building."  At some point thereafter, the two non-parties conveyed their respective interests to Defendants Brown and Rosenquist, and then Rosenquist conveyed his interest in the property to Defendant Lady Belle Partnership.

In December of 1972, Defendant Vail 21 Condominium Association (the "Condominium Association") was established.  At the first meeting, Defendants Brown and Rosenquist were elected to the Condominium Association Board of Directors.  In addition, at that time the Condominium Association set a monthly assessment fee for each condominium unit, which included a $5.00 "parking maintenance fee," and authorized a manager to maintain the parking lot surfaces.  From that point forward, the Condominium Association paid a percentage of the cost of maintenance, snow removal and insurance for the garage constructed on Parcel No. 3.  Sometime between 1977 and 1982, Defendants began charging the Condominium Association and/or its individual members for parking in the garage.

On January 20, 1983, Defendants Brown and Rosenquist entered into a 99-Year Lease with the Condominium Association for 2,000 square feet of the general common elements of the

Vail 21 Building. The 99-Year Lease was first amended, via a modification dated December 28, 1989, to add an additional 376 square feet of general common area (the "First Modification"). On December 18, 1990, the 99-Year Lease was again modified (the "Second Modification") to include a provision "tying the 99-Year Lease to a reciprocal obligation on the part of the Defendants . . . to provide parking to the [Condominium] Association in the Garage at fixed rates for the remainder of the term of the 99-Year Lease Term." Upon Plaintiffs' information and belief, neither the 99-Year Lease nor the modifications thereto were presented to or voted upon by the members of the Condominium Association.

At some point, individual members of the Condominium Association became concerned about the Condominium Associations' interest in the garage and whether an inadequate number of parking spaces were being provided to them. In January of 2006, Defendant Brown's counsel wrote a letter indicating that the Condominium Association and Plaintiffs in this case have no interest in the garage or any rights whatsoever to parking in the garage.

In their complaint, Plaintiffs assert that they are members of the Condominium Association, and that they are bringing this action to enforce the rights of the Condominium Association. Specifically, Plaintiffs assert that they "were members of the [Condominium] Association at the time of some of the transactions of which the Plaintiffs complain and/or membership thereafter devolved on them by operation of law as a consequence of their purchase of condominium units within the Vail 21 Building and as members of the [Condominium] Association." Plaintiffs allege that they represent the interests of a number of similarly situated members in the Condominium Association who have, despite oral and written demand, been unable to compel the Condominium Association and Defendant Brown, as its president, to refrain

3

from acting in Brown's own best interest and against the best interests of the Condominium Association. In addition, Plaintiffs assert that they have been unable to compel the Board of Directors to commence legal action to protect the rights of the Condominium Association and its members. Finally, they maintain that Defendant Brown "exercises substantial control over the [Condominium] Association and its Board of Directors . . . culminating in the creation of a number of self-serving and self-dealing agreements which have harmed, and continue to harm, the [Condominium] Association and its members, including Plaintiffs."

Plaintiffs' first and second claims for relief are for anticipatory breach of contracts to provide parking and declaratory relief. Plaintiffs also bring claims based on the 99-Year Lease, and the two modifications thereto, breach of fiduciary duty (third claim for relief), usurpation of a corporate opportunity (fourth claim for relief), and that the 99-Year Lease is void (fifth claim for relief) or unconscionable (sixth claim for relief).

## II.  STANDARD OF REVIEW

Defendants move for dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

The Supreme Court has recently ruled that the standard for review previously applied under Fed. R. Civ. P. 12(b)(6) — "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"– is "best forgotten as an incomplete, negative gloss on an

4

accepted pleading standard." *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____ , 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).  Although the Supreme Court did not clearly articulate the proper standard for a Fed. R. Civ. P. 12(b)(6) dismissal, its opinion in *Bell Atlantic v. Twombly* and its subsequent opinion in *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), "suggest that courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.,* __ F.3d __, FN. 2, 2007 WL 2019752 (10th Cir., July 13, 2007)(*citing Iqbal v. Hasty*, 490 F3d 143 (2d Cir. 2007)).

Under this new "plausibility" standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.,* ___ F.3d ___, 2007 WL 2083744 (10th Cir., July 23, 2007)(*citing Bell Atl. Corp. v. Twombly*, *supra*, 127 S.Ct. at 1960); *see also Alvarado v. KOB-TV, LLC, supra*, at page 3 ("[w]e look for plausibility in th[e] complaint").  "We must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* ___ F.3d ___, 2007 WL 2136579, 3 (10th Cir., July 26, 2007)(*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).  Although the plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action . . . [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Lane v. Simon, supra* (*quoting Bell Atl. Corp. v. Twombly*, *supra*, 127 S.Ct. at 1955; *Erickson v. Padrus, supra,* 127 S.Ct. at 2200).

### III. LEASE CLAIMS

I first address Defendants' challenge to Plaintiffs' claims based on the 99-Year Lease, and its subsequent modifications thereto, breach of fiduciary duty (third claim for relief), usurpation of a corporate opportunity (fourth claim for relief), and that the 99-Year Lease is void (fifth claim for relief) or unconscionable (sixth claim for relief). Defendants assert that Plaintiffs' lack standing under Fed. R. Civ. P. 23.1 to bring these derivative claims based on transactions that occurred prior to the date Plaintiffs became members of the Condominium Association.

Fed. R. Civ. P. 23.1 provides that in a derivative action "the complaint shall . . . allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law." *See also Eastern Oklahoma Television Co. v. Ameco, Inc.,* 437 F.2d 138, 141 (10th Cir. 1970).

Although Plaintiffs allege in their complaint that they were members of the Condominium Association at the time of "some" of the transactions of which they complain, they now acknowledge that they were not members at the time the 99-Year Lease and the modifications were entered into. The initial 99-Year Lease was entered into on January 20, 1983, and was first modified on December 28, 1989, and then again on December 18, 1990. Plaintiffs acknowledge that they later acquired their condominiums, and thus became members in the Condominium Association, in 1993, 1995 and 2004.

Plaintiffs argue that standing under Fed. R. Civ. P. 23.1 is adequately alleged, however, because the alleged wrongs here are "continuing in nature." *See e.g. Bateson v. Magna Oil Corp.*, 414 F.2d 128 (5th Cir. 1969)(holding that the contemporaneous-ownership requirement

6

may be satisfied by a particularized allegation of a continuing wrong); *Noland v. Barton,* 741 F.2d 315, 318 (10th Cir. 1984)(acknowledging that while not applicable there, a "continuing harm exception may exist" under *Bangor Punta Operations, Inc. v. Bangor & A. R. Co.,* 417 U.S. 703, 71-11, 94 S.Ct. 2578, 41 L.Ed.2d 481 (1974)).  However, as stated in *Federal Practice and Procedure* at Section 1828,

> The federal courts generally have rejected the contention that the entire series of events constitutes a single transaction—the so-called "continuing wrong" notion—entitling plaintiff to bring suit for injuries suffered by the corporation prior to plaintiff's acquisition of stock. Rather, plaintiff[s have] been barred from complaining about events of this character on the theory that they assume their wrongful character as of the time of the initial event, which antedated plaintiff's gaining shareholder status.

7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1828, at pg. 65 (2d ed. 1995)("Wright & Miller"); *see also Herald Co. v. Seawell,* 472 F.2d 1081, 1098 (10th Cir. 1972). In *deHaas v. Empire Petroleum Co.,* 286 F.Supp. 809, 812 (D. Colo. 1968), *affirmed on other grounds*, 435 F.2d 1223 (10th Cir. 1970), the court found that plaintiffs who alleged that a reorganization fraud was of a "continuing nature" still lacked standing because "every harm to a corporation is 'continuing' when someone has taken away some of its assets wrongfully." *Id.* (*quoting Pergament v. Frazer*, 93 F.Supp. 9, 12 (E. D. Mich. 1949)).  The court further ruled that Fed. R. Civ. P. 23.1(1) "clearly requires that the plaintiff be a shareholder when the transactions occurred, and a mere allegation of 'continuing' fraud cannot deprive the Rule of its obvious intent." *Id.*   As a result, I conclude that Plaintiffs' allegation of continuing wrongs fails to meet the contemporaneous ownership requirement of Fed. R. Civ. P.  23.1.

Plaintiffs also assert in their complaint that their membership in the Condominium Association "thereafter devolved on them by operation of law as a consequence of their purchase

of condominium units." However, "by operation of law" under Fed. R. Civ. P. 23.1. refers to "any nonconsentual transaction by which plaintiff acquired the stock." 7C Wright & Miller § 1828 pg. 68; *see also Bank of Santa Fe v. Petty,* 867 P.2d 431, 437 (N.M. App. 1993). For example, shares received as a devise by will devolve by operation of law, *see Dawson v. Dawson,* 645 S.W.2d 120, 126-27 (Mo. Ct. App.1982), while the intentional purchase and foreclosure of shares of bank stock that secured a note was deliberate and did not occur merely by operation of law, *see Bank of Santa Fe v. Petty, supra*, 867 P.2d at 437. As such, I reject Plaintiffs' argument that their membership interests, obtained through the purchase of their condominiums, devolved by operation of law as contemplated by Fed. R. Civ. P. 23.1. Therefore, I conclude that Plaintiffs lack standing, under Fed. R. Civ. P. 23.1, to bring their third, fourth, fifth, and sixth claims for relief set forth in Plaintiffs' complaint based on the 99-Year Lease, and the modifications thereto. As such, I grant in part Defendants' motion to dismiss related to these claims pursuant to Fed. R. Civ. P. 12(b)(6) and 12(h)(c).

Plaintiffs "suggest" in their response brief that an amended complaint may cure the pleading defect. Plaintiffs have neither filed a motion to amend nor tendered an amended complaint, and such relief cannot be merely "suggested" within their brief. And, as Plaintiffs "acknowledge" in their response brief at page 4, footnote 2, they became Condominium Association members in 1993, 1995, and 2004, respectively. So, any amendment would be futile. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)("[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal")(*quoting Jefferson County Sch. Dist. v. Moody's Investor's Services,* 175 F.3d 848, 859 (10th Cir. 1999)).

## IV.  PARKING CLAIMS

Defendants also challenge Plaintiffs' claims related to their alleged parking rights in the garage; specifically, Plaintiffs' anticipatory breach of contract to provide parking claim (first claim for relief) and their declaratory relief to provide parking claim (second claim for relief).

**<u>Anticipatory Breach Claim</u>**

In their compliant, Plaintiffs aver that they are the intended and actual beneficiaries of the purchase agreement in which Brown and Rosenquist purchased Parcel No. 3, where the parking garage was subsequently constructed.  They further allege that the Condominium Association was not initially charged any monthly parking fee, but instead paid for maintenance and insurance.  At some point, the Condominium Association's residential members began paying $30.00 per month for parking spaces and that agreement was subsequently memorialized in the Second Modification (dated December 18, 1990) for the remainder of the 99-Year Lease term.  However, in a January 13, 2004 letter from his attorney, Brown asserted that the Condominium Association and Plaintiffs "have no rights whatsoever to parking in the Garage and no interest in the Garage."  Additionally, Plaintiffs alleged that Defendants Brown and Lady Belle have threatened to raze the garage, "re-develop" it, and sell or rent spaces in the garage to third parties to the exclusion of the Condominium Association and its members.   Plaintiffs specifically aver that such behavior constitutes an anticipatory breach of both the purchase contract and the 99-Year Lease as modified by the Second Modification.

Under Colorado law, "[a]n anticipatory repudiation of contract may occur upon a party's definite and unequivocal manifestation of its intention that it will not perform as required by the

9

contract." *Highlands Ranch University Park, LLC v. Uno of Highlands Ranch, Inc.,* 129 P.3d 1020, 1023 (Colo. App. 2005)(*citing Johnson v. Benson*, 725 P.2d 21 (Colo. App.1986); *Lake Durango Water Co. v. Pub. Utils. Comm'n*, 67 P.3d 12 (Colo. 2003)).

Defendants argue that Plaintiffs have not adequately alleged facts sufficient to support the existence of a contractual right. As to the purchase contract, Defendants maintain that Plaintiffs have not alleged the terms of parking obligation – including duration or price – nor have they explained the differing parking "schemes" or rights set forth in other documents such as the protective covenants or Plaintiffs' own vesting deeds. As to the Second Modification, Defendants assert that the plain and unambiguous language of this modification to the 99-Year Lease does not create a parking obligation. Under the present Fed. R. Civ. P. 12(b)(6) standard, I view the specific allegations in the complaint as true to determine whether they plausibly support a legal claim for relief; specifically, whether there are enough facts to support all the elements necessary to establish an entitlement to relief under the legal theory proposed. *See discussion, supra*.

Plaintiffs allege that the purchase contract "contained a provision that required the such parcel be used sole for the purposes of constructing a parking garage (the "Garage") to provide a minimum of fifty-eight parking spaces for the owners of the commercial and residential condominium units ...". They further allege that the Second Modification included a provision "tying the 99-Year Lease to a reciprocal obligation on the part of the Defendants ... to provide parking to the Association in the Garage at fixed rates for the remainder of the term of the 99-Year Lease Term." As such, Plaintiffs have adequately alleged enough specific facts to plausibly support the existence of a contractual right.

To the extent that Defendants argue no contractual obligation exists – based on the plain language of the agreements or contrary language in other agreements – such arguments are best addressed upon a summary judgment motion.  Furthermore, I conclude that the specific factual allegations asserted by Plaintiffs provide plausible support for the requirement that Defendants have exhibited a "definite and unequivocal manifestation of their intent fail to render the promised performance."  *Johnson v. Benson, supra*, 725 P.2d at 25; *see also Albright v. McDermond*, 14 P.3d 318, 324 (Colo. 2000)(requiring an "overt communication of intention or an action which . . . demonstrates a clear determination not to continue with performance").  Therefore, I conclude that Plaintiffs have adequately stated a claim for anticipatory breach of contracts related to the parking rights pursuant to Fed. R. Civ. P. 12(b)(6).

**Declaratory Relief Claim**

As an initial matter, I note that the parties disagree regarding the applicable law to assess Plaintiffs' claim for declaratory relief.  Defendants assert that this court's jurisdiction to render declaratory relief rests in the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, while Plaintiffs assert that I should employ standards under the Colorado's Uniform Declaratory Judgment Law, C.R.S. § 13-51-101, *et. seq.*  However, as discussed *infra*, I conclude that I have jurisdiction to under both the federal and state law statutes providing for declaratory relief.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides this court with the discretion to accept jurisdiction in a declaratory judgment case.  *See Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962).  In *State Farm Fire and Casualty Company v. Mhoon*, 31 F.3d 979, 982 -983 (10th Cir. 1994), the Tenth Circuit set forth

the following factors that a court should look to when making that such determination:

> (1) whether action would settle the controversy; (2) whether it would serve a useful purpose in clarifying legal relations at issue; (3) whether declaratory remedy is being used merely for purpose of 'procedural fencing' or 'to provide arena for race to *res judicata*'; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (*quoting Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1063 (6th Cir.1987)(the "*Mhoon* factors").

Defendants maintain that the first two factors are not met here; specifically, whether court action would settle controversy and whether such action would serve useful purpose in clarifying legal relations at issue. They argue that the complaint alleges only that Defendants have "threatened to re-develop or sell the Garage as some unspecified future time," not that "there is a concrete or imminent plan to do either." Moreover, because any new plan or re-development for Parcel 3 or the garage must be considered and approved by the Town of Vail, Defendants argue that "there is no concrete controversy for this or any other Court to address" at this time. However, because I have determined that Plaintiffs have raised a claim for anticipatory breach sufficient to withstand dismissal under Fed. R. Civ. P. 12(b)(6), I likewise conclude that a determination of the parking rights of the respective parties would clearly settle controversy and would serve useful purpose in clarifying legal relations at issue. I further conclude that the remaining *Mhoon* factors are either not applicable or do not weigh in favor of declining jurisdiction.

In addition, Plaintiffs' claim for declaratory relief is cognizable under Colorado's Uniform Declaratory Judgment Law, C.R.S. §§ 13-51-101, *et. seq*., which provides "a remedy, in cases of

actual controversy, for determining issues and adjudicating the legal rights, duties, or status of the respective parties, before controversies with regard thereto lead to the repudiation of obligations, the invasion of rights, and the commission of wrongs." *Ainsworth v. Colorado Ltd. Gaming Control Com'n*, 45 P.3d 768, 771 -772 (Colo. App. 2001)(*quoting American Family Mutual Insurance Co. v. Bowser*, 779 P.2d 1376, 1380 (Colo. App. 1989)).  Here, Plaintiffs have sufficiently plead an actual controversy related to the parties' respective parking rights in the garage for which resolution thereof would provide "early relief from uncertainty as to the future obligations for one who would normally be a defendant and who otherwise would not have his questions adjudicated until his adversary takes the initiative." *Ainsworth v. Colorado Ltd. Gaming Control Com'n, supra,* 45 P.3d at 772.  Therefore, I conclude that Plaintiffs have adequately stated a claim for declaratory relief under both federal and state law.

Accordingly, I GRANT IN PART and DENY IN PART the Motion to Dismiss [**Doc #14**], and ORDER as follows:

1)  Plaintiffs' Third, Fourth, Fifth, and Sixth Claims for Relief in their Verified Complaint and Jury Demand are DISMISSED for lack of standing pursuant to Fed. R. Civ. P. 23.1, against Defendants Richard N. Brown and Charles Rosenquist, as individuals; Lady Belle Partnership, LLLP, an Arizona limited liability limited partnership; and C.H.R., Inc., a Colorado corporation; and

2)  Defendants' Motion to Dismiss as to Plaintiffs' First and Second Claims for Relief in their Verified Complaint and Jury Demand (for anticipatory breach of contracts to provide parking claim and declaratory relief) is DENIED.

Dated: September __4__, 2007, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE